THE PRESIDENT, DIRECTORS AND COMPANY OF THE AGAWAM
BANK *vs.* GEORGE B. MORRIS.

Two partners having given a promissory note on partnership account, signed with their individual names, to a person to whom the existence of the partnership was known, who indorsed and transferred the note, without informing the indorsee of the partnership, one of the partners afterwards went into insolvency, but without any property of the firm being assigned to his assignee; it was held, upon proof of the partnership, that the note was a partnership note, provable as such against the insolvent by the indorsee, who would be entitled to a dividend thereon out of any surplus remaining after paying the separate debts of the insolvent.

A partnership note having been indorsed by the payee to a third person, and by him indorsed to and discounted at a bank of which he was president, and one of the promisors having afterwards become insolvent, the bank proved the note as a claim against his estate: The solvent promisor, afterwards, at the request of the second indorser, and for the purpose of securing him and the bank, but without the knowledge of the bank, gave him security applicable to the note in question, and also to another note held by the bank, such indorser promising to account to the promisor for the surplus of the security, if any: It was held, that the security was not given to the bank, but was a personal one to the second indorsee, and to indemnify him as such; and that a subsequent order of the commissioner, on the motion of the assignee, directing the note to be struck out of the list of claims proved, and disallowing the same, on the ground, that the bank held collateral security therefor, which had not been surrendered or applied, was erroneous.

THIS was a petition addressed to the court under their jurisdiction in matters of insolvency, in which the petitioners prayed for a mandamus to the defendant, as commissioner of insolvency for the county of Hampden.

The following facts were set forth in the petition : —

That on the 6th day of February, 1849, a warrant was duly issued by the commissioner against Veranus Chapin, on the petition of John S. Leonard, one of his creditors, and his estate was, on the 19th of February, assigned to an

assignee; that the plaintiffs proved before the commissioner certain notes, signed by Veranus Chapin and John S. Leonard, payable to the order of Stephen C. Bemis, at the Agawam Bank, and indorsed by said Bemis and by Chester W Chapin; that the commissioner, on motion of the assignee, decided, upon certain evidence produced before him, that the notes were partnership notes of Veranus Chapin and John S. Leonard, and that the plaintiffs should not be allowed to have a dividend declared upon them till the separate claims proved against Chapin's estate should have been paid; that the commissioner, at a subsequent time, on motion of the assignee, ordered that these notes should be stricken from the list of proved debts and disallowed, on the ground that the plaintiffs held collateral security for the payment of the same, which had not been released and delivered up to the assignee.

The petition concluded in these terms: " And the plaintiffs, feeling aggrieved by the said order of said commissioner, appeal therefrom to this court, and pray that this court will take cognizance of this cause, and that they will issue a mandamus to said commissioner, commanding him to admit said claim to a dividend, and will grant such other relief in the premises as to justice and equity shall appertain.

The testimony introduced before the commissioner was as follows:—

Veranus Chapin, the insolvent, having previously received a valid discharge from his creditors, testified, that at the time the notes in question were given, he was in partnership with Leonard in the buying and selling of coal; that there were no articles of partnership, but that handbills were posted up in the name of Chapin & Leonard; that said notes were given in payment for coal purchased of Stephen C. Bemis, the payee; that but one other note had been given by them previously on partnership account, which was for $100, the price of hay scales, which note was worded and signed in the same manner, and made payable at the Agawam Bank that both he and Leonard were present at the purchase, and told Bemis that they were going into the

business of buying and selling coal in company; that the business was managed and the books kept by Leonard; that said notes were filled up by Bemis, and signed by witness and Leonard; and that nothing was said about the mode of signing, but that Bemis requested they might be made payable at the Agawam Bank; that it was understood by Chapin & Leonard that the proceeds of sales of coal were to be deposited in the bank to pay the notes; and that there had been no settlement of the partnership business between them.

Stephen C. Bemis testified, that he sold the coal to Chapin & Leonard, and supposed them to be in company in some way, as they were both together when it was bought; that he sold the coal to them for cash, but told them if they would give a note or notes he would give them a credit; that afterwards, when the notes were given, he made them out payable at the bank, and they signed them, but nothing was said as to the manner of signing; that the coal was charged on his books, which he produced, to " Chapin & Leonard;" the first charge being September 21st, 1848, the second charge November 11th, and the third charge (for interest) December 4th, the date of the notes; that his reliance was upon Chapin more than on Leonard, and that he knew nothing about their company, what sort of an arrangement they had between themselves, at the time; and that he never, until after the discount of the notes, informed any officer of the bank of their being partnership notes.

He also testified, that at the time of the receipt given to Chester W. Chapin, hereinafter mentioned, Leonard owed nim about $150, to secure which Chapin held an assignment from him of his dividend upon a claim of $371·32, which he had proved against the estate of the insolvent, together with a pledge of said hay scales above mentioned, worth about $50; and that the dividend ordered upon the claim of $371·32, on the 3d day of September, was $185·66. No partnership property of Chapin & Leonard was assigned to the assignee of Chapin.

Chester W. Chapin testified, that he was the president of

9*

the Agawam Bank, and the indorser of the notes in question; that the bank did not, to his knowledge, hold any collateral security for the payment of the same; that said notes were indorsed by him before discount: that there was no previous arrangement that he should indorse them, but that he had been in the habit of indorsing for Bemis, more or less, for ten years past, and that as an individual and an indorser, he obtained from Leonard and held certain securities; that after the insolvency of Chapin, he pressed Leonard for security, and subsequently to the proof and allowance of the notes against Chapin's estate, such security was given by Leonard; that it also covered another note held by the bank, besides the notes in question; and that he signed and gave Leonard a receipt for said security in the following form:—

" J. C. Leonard, being indebted to the Agawam Bank in the sum of $1533·46 and interest, and to S. C. Bemis on account for about $150, and whereas said Leonard has deposited with me $1025·46 for the purpose of securing said sum of $1533·46 and interest on the same, I do hereby agree that I will account with said Leonard for so much of the same in my hands as may remain after paying all said debts in full. Springfield, May 30th, 1849."

This witness further testified, that the security was deposited by Leonard for the purpose of making the bank and himself fully secure, his object being to secure himself and the bank. The bank knew nothing of it.

It was admitted by the parties, that the facts stated in the petition were true; that the testimony above set forth was that which was before the commissioner, and which induced his decision; and that each party had been duly notified of the proceedings, appeals, petitions, &c. And it was agreed, that the court might pass such order or decree as justice and equity might require; all matters of form being waived by the parties, and the case to be decided as though regularly before the court, under the provisions of the insolvent law giving them chancery jurisdiction.

*W. G. Bates*, for the petitioners.

*H. Morris* and *G. Walker*, for the respondent.

SHAW, C. J.   This is a petition to the court, under its summary jurisdiction in cases of insolvency, in the nature of an appeal from the decision of the respondent, as the commissioner of insolvency for the county of Hampden, in the matter of the insolvency of Veranus Chapin.

The facts of the case, as set forth in the petition, and in the statement of the testimony before the commissioner, are, by the agreement of. the parties in interest, admitted to be true.

The court are of opinion, upon the evidence, that the notes held by the Agawam Bank, signed by Veranus Chapin and John S. Leonard, were partnership notes, and as such constituted a partnership debt of the two promisors to the bank. The proof of these notes, therefore, was rightly admitted in proceedings against the separate estate of Veranus Chapin in insolvency, because, as a partner and joint debtor, he owed them.   But it will be the duty of the assignee to keep distinct accounts of the separate debts and separate assets of the insolvent, and the separate assets must first be applied to pay his separate debts, until they are fully discharged ; then, if there be any surplus, it will be added to the fund of partnership assets, if any, and applied to the payment of the partnership debts of Chapin & Leonard.   *Barclay* v. *Phelps*, 4 Met. 397.

Upon the other point, it is contended, that the collateral security given by Leonard to Chester W. Chapin should first be applied to the payment of these notes, before proving this debt against the estate of Veranus Chapin.   It happened, that Chester W. Chapin, who was the second indorser on the notes, was also president of the bank.   We are of opinion, upon the evidence, that the security given by Leonard, a copromisor, to Chester W. Chapin, president of the bank, after the debt against Veranus Chapin had been proved and allowed, was given to him as a personal security, to indemnify him as second indorser, for such sum as he might be held to pay, being the balance which would be due after deducting the dividend received on the estate of Veranus Chapin.   This collateral security was not given or intended

as a security to the bank; was not one of which they could avail themselves; and therefore not one which they were bound to surrender, or apply, before proof of their debt. The order of the commissioner, therefore, striking out the proof of the debt, because the bank had not applied or surrendered that security, was in our opinion erroneous, and must be reversed, and that proof reinstated.

This renders it unnecessary to consider and decide the more general question, whether, after proof of debt, in cases of insolvency, the commissioner has authority, without some order or direction of this court, to revise and reverse his own former decisions, allowing proof, and to decide, upon new facts or new views of the law, that such proof shall be expunged.  *Order to the commissioner accordingly.*